**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Jeffrey T.,

Plaintiff,

v.

Frank Bisignano,
Commissioner of the Social Security Administration,

Defendant.

No. 25-cv-2996 (DLM)

**ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Jeffrey T. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for benefits. This matter is before the Court on Plaintiff's request that the Commissioner's decision be vacated and the matter remanded for further administrative proceedings. Plaintiff filed his brief in support of remand on October 29, 2025. (Doc. 10.) The Commissioner filed his response brief in opposition on January 6, 2026. (Doc. 13.) Plaintiff filed his reply brief on January 20, 2026. (Doc. 14.) This matter is now ripe for the Court's decision. For the reasons stated below, the Court denies Plaintiff's request for remand.

**BACKGROUND**

On July 21, 2022, Plaintiff applied for Supplemental Security Income ("SSI"), alleging disability beginning on August 2, 2021. (Tr.[1] at 196-98, 199-204.) The Social Security Administration ("SSA") denied Plaintiff's claim initially (Tr. at 124-27, 128-32) and upon Plaintiff's request for reconsideration (Tr. at 120-23). Plaintiff then timely requested a hearing before an Administrative Law Judge ("ALJ") (Tr. at 140), and the ALJ held a hearing on the matter on June 7, 2024 (Tr. at 33-63). Plaintiff was represented by counsel, appeared at the hearing, and testified on his own behalf. (Tr. at 33, 49-57.) A vocational expert also testified, opining that there were a significant number of jobs in the national economy across three representative occupations listed in the Dictionary of Occupational Titles ("DOT"), each of which a person with similar limitations to Plaintiff could perform: hand packager (DOT No. 920.587-018); machine feeder (DOT No. 699.686-010; and warehouse worker (DOT No. 922.687-058)). (Tr. at 58.)

On July 5, 2024, the Commissioner sent Plaintiff notice of unfavorable decision. (Tr. at 12-14 (Notice), 15-27 (Decision).) The ALJ recognized that Plaintiff suffered several severe impairments, including chronic obstructive pulmonary disease ("COPD"), attention deficit-hyperactivity disorder ("ADHD"), depression, post traumatic stress disorder ("PTSD"), and antisocial personality disorder. (Tr. at 17.) The ALJ also considered Plaintiff's other ailments including hypertension, ventral hernia, gastritis,

[1] The Commissioner filed the consecutively paginated transcript of the administrative record on September 22, 2025. (Doc. 8.) For ease of reference, citations to the transcript will identify the page number listed on the lower right corner of the cited document.

coronary artery disease, and substance abuse disorder, but ultimately determined these impairments were not severe. (Tr. at 17-18.)

The ALJ also considered how the severity of Plaintiff's mental impairments affected him across four broad functional areas.[2] (Tr. 18-19.) The ALJ found that Plaintiff was moderately impaired in his ability to understand, remember, or apply information; in his ability to interact with others; and in his ability to concentrate, persist, or maintain pace. (Tr. at 19.) The ALJ further found that Plaintiff had a mild limitation in his ability to adapt or manage himself. (Tr. at 19.) The ALJ reached these conclusions after considering both Plaintiff's testimony regarding his impairments (Tr. 19; *see also* Tr. at 270-77), as well as the opinion of consultative examiner Donald Wiger, Ph.D., a licensed psychologist (Tr. at 19; *see also* Tr. at 1388-91 (Dr. Wiger's consultative examination report)).

The ALJ ultimately determined that Plaintiff retained the residual functional capacity ("RFC")[3] to perform medium work,[4] so long as there was no concentrated exposure to humidity or to dust, odors, fumes and pulmonary irritants; no concentrated exposure to extreme cold or extreme heat; simple, routine and repetitive tasks but not at a

[2] In evaluating the limitations a claimant's mental impairments impose, an ALJ is directed to consider: (1) the claimant's ability to understand, remember, or apply information; (2) the claimant's ability to interact with others; (3) the claimant's ability to concentrate, persist, or maintain pace; and (4) the claimant's ability to adapt or manage oneself. 20 C.F.R. § 416.920a(c)(3). The ALJ must rate the degree of a claimant's impairment in each functional area based on a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 416.920a(c)(4).

[3] "RFC is defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (quoting *Leckenby v. Astrue*, 487 F.3d 626, 631 n.5 (8th Cir. 2007)) (cleaned up).

[4] By regulation, medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416. 967(c).

fast production rate pace, such as that found in assembly-line work; and no more than occasional interaction with the public. (Tr. at 20.) With the RFC as formulated, the ALJ determined Plaintiff could perform the three representative occupations identified by the vocational expert, and accordingly found Plaintiff not disabled. (Tr. at 26-27.) The Appeals Council denied Plaintiff's request for review on June 6, 2025. (Tr. at 1-3.) The ALJ's decision is thus the final decision of the Commissioner.

Plaintiff does not contest that the ALJ followed the five-step sequential process laid out in 20 C.F.R. § 416.920(a)(4)[5] for evaluating SSI claims. Rather, he alleges legal error based on the ALJ's formulation of the RFC, claiming: (1) the ALJ formulated a mental-limitation RFC that was not based on any medical opinion but instead "played doctor" by using his own interpretation of Plaintiff's medical record; and (2) the ALJ failed to fulfill his duty to develop the record. The Court addresses these issues below.

**ANALYSIS**

This Court reviews the ALJ's denial-of-benefits decision to determine whether it is supported by substantial evidence in the record as a whole, and whether the decision was infected by legal error. 42 U.S.C. § 405(g); *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir.

[5] Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. If not, the ALJ must decide next (in step two) whether the claimant's impairments are severe, and of a duration of least 12 continuous months. At step three, the ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment under appendix 1 to subpart P of part 404. If so, the claimant is considered disabled without further inquiry. If not, the ALJ must determine the claimant's RFC, and determine (at step four) whether the claimant can still do their past work given their limitations. Finally, if the ALJ concludes that a claimant cannot perform their prior work, step five requires the ALJ to determine whether they can do other work considering their RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(i-v).

2022). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1138, 1154 (2019) (cleaned up) (further citation omitted); *see also Nash v. Comm'r, Soc. Sec. Admin*, 907 F.3d 1086, 1090 (8th Cir. 2018) (characterizing "substantial evidence" as "less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusions"). Courts reviewing ALJ decisions must look to the entire administrative record to determine whether it contains sufficient evidence to support the ALJ's conclusion. *Biestek*, 139 S. Ct. at 1154; *Grindley v. Kijakazi*, 9 4th 622, 627 (8th Cir. 2021). When substantial evidence supports the ALJ's decision, the Court will not reverse, even if substantial evidence also supports a contrary outcome. *Nash*, 907 F.3d at 1089.

## I. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S DECISION.

Plaintiff claims the ALJ formulated an RFC untethered from any medical opinion and based on what Plaintiff asserts is an incomplete record. Specifically, Plaintiff alleges fault with the ALJ's finding that four of five medical opinions about Plaintiff's mental impairments were "not persuasive."[6] (Tr. at 24-25.) He takes issue with the fact that the single medical opinion the ALJ found persuasive, that of Marci Mylan, Ph.D., a licensed psychologist, opined that while Plaintiff had severe mental impairments there was

[6] Plaintiff does not directly challenge the sufficiency of the ALJ's medical opinion analysis, but in a footnote, selectively quotes the ALJ's decision, attempting to cast doubt on the ALJ's supportability and consistency analysis. (Doc. 10 at 15 n.2.) But the Court's review of the ALJ's decision reveals no error; the ALJ's medical opinion analysis is consistent with regulation. *See* 20 C.F.R. § 416.920c(c)(1), (2).

insufficient evidence to evaluate any functional limitations. (Tr. at 24; *see also* Tr. at 97-98 ("Forms have not been returned. . . . Insufficient [e]vidence to assess mental functioning.").) As a result, says Plaintiff, the ALJ must have used their own interpretation of Plaintiff's medical records. In Plaintiff's view, however, the ALJ should have further developed the record to obtain an additional medical information about Plaintiff's mental functioning.

Plaintiff's contention stands at odds with both controlling precedent and SSA regulation. In *Bonham v. Bisignano*, 177 F.4th 934, 942 (8th Cir. 2026), the Eighth Circuit clarified that it does "not suggest that an ALJ must in all instances obtain from medical professionals a functional description that wholly connects the dots between the severity of [a claimant's impairments] and the precise limits on a claimant's functionality. Something, however, is needed." *Id*. (quoting *Noerper v. Saul*, 964 F.3d 738 (8th Cir. 2020)). Section 416.945(a)(3) and case law "make clear that the 'something' may be based on reliable objective medical data such as clinical examinations and diagnostic imaging and need not include a medical professional's opinion regarding the claimant's functionality." *Id*.; 20 C.F.R. § 416.945(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence. . . . We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations."). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace. However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Bonham*, 177 F.4th at

941 (*Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016)). Accordingly, the Court concludes that the ALJ was not required, as Plaintiff suggests, to rely on any specific medical opinion to construct Plaintiff's RFC, and was permitted to assess Plaintiff's RFC based on all the relevant medical evidence and other evidence in the record.

Moreover, the Court is unpersuaded that the record required further development regarding Plaintiff's RFC. Plaintiff's contention that the ALJ failed to fairly and fully develop the record is ultimately a challenge to whether substantial evidence supports the ALJ's decision. *See Bonham*, 177 F.4th at 940, 942. While an ALJ does not possess "unfettered discretion to determine a claimant's RFC," the ALJ also "has no duty to seek clarification of medical opinions if the record contains other detailed clinical evidence of the claimant's limitation" unless a "crucial issue is undeveloped[.]" *Id*. at 940-41 (cleaned up); *see also Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). While Plaintiff may disagree with the ALJ's findings, the Court will not reverse if substantial evidence exists in the record to support the ALJ's RFC findings. *See Austin*, 52 F.4th at 730. Even if substantial evidence exists to support a "contrary outcome," so long as the ALJ's decision falls within the "available zone of choice" the Court will not disturb the result. *Id*. at 728.

Here, the ALJ found "after careful consideration of the evidence" that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. at 21.) To assess Plaintiff's mental impairments the ALJ

reviewed Plaintiff's medical examination records reflecting Plaintiff's condition and treatment for "ADHD, depression, PTSD, and antisocial personality disorder" from 2022 to 2024. (Tr. at 22-23.) The ALJ found, based on his review of Plaintiff's treatment records, that Plaintiff "has been treated for ADHD, depression, PTSD, and antisocial personality disorder" and "endorsed chronic anxiety and depression," but the ALJ concluded that "mental status examinations have not shown marked issues as he's adhered to his treatment program." (Tr. at 22.)

The ALJ noted that July, August, and September 2022 mental status examinations showed that Plaintiff had "active, near constant moving, fidgetiness behavior" but that "all of the other findings were normal"; Plaintiff "was able to remain focused during the interview with minimal distractibility or need for redirection. His control of impulsivity and short-term memory were good. His long-term memory, abstract ability, and insight were also intact[.]" (Tr. at 22; *see also* Tr. at 448, 466, 474.) The ALJ also reviewed psychiatric exam notes from November 2022, which stated that Plaintiff "reported that his depression and anxiety symptoms were well controlled but [he was] still having problem with his attention span." (Tr. 22; *see also* Tr. at 670.) But the examination also showed "normal findings: awake, alert, and oriented times three; cooperative and polite; intact speech; normal mood and affect; normal gait; and no focal deficit." (Tr. at 22; *see also* Tr. at 672.) The ALJ further noted that March, April, July, September, and December 2023 mental status examinations all showed "normal findings." (Tr. at 22-23; *see also* Tr. at 702, 688, 891, 922, 1382-83.) Additionally, the ALJ noted that an April 2024 mental status examination also showed "normal findings,"; "average, intact fund of knowledge; able to

remain focused during the interview with minimal distractibility or need for redirection; and intact short and long term memory"; and Plaintiff's "ADHD and PTSD were noted as stable" and his "antisocial personality disorder" "was noted as stable." (Tr. at 23; *see also* Tr. at 1499, 1503-05.) The ALJ ultimately determined that Plaintiff's "residual functional capacity is supported by substantial evidence of record, and it sufficiently addresses the work-related limitations caused by the claimant's severe physical and mental impairments." (Tr. at 25.) The ALJ "further limited" Plaintiff's RFC "in light of [his] symptoms from his mental impairments . . . to simple, routine, and repetitive tasks but not at a fast production rate pace, such as that found in assembly-line work, and to no more than occasional interactions with the public." (Tr. at 25.)

The Court concludes that the objective medical evidence on which the ALJ relied supported the ALJ's RFC determination. Here, as in *Bonham*, the ALJ thoroughly reviewed mental status examination notes from the relevant period and determined that Plaintiff was not disabled. 177 F.4th at 945. The ALJ did not simply rely on his own inferences but rather constructed an RFC based on the objective medical evidence and accounted for Plaintiff's documented mental impairments. That the ALJ gave more weight to relevant objective evidence in Plaintiff's medical records than to medical opinions that either established no severe limitation or were outside the relevant time period (Tr. at 24-25; *see also* Tr. at 108, 364, 980-81, 1391) does not create a crucial issue in need of further development. *See Bonham*, 177 F.4th at 945 For the reasons explained above, the Court finds that the ALJ's decision was based on substantial evidence in the record and therefore declines to reweigh the evidence now.

## ORDER

Based on the above findings, as well as the files, records, and proceedings above,

**IT IS ORDERED**:

1. Plaintiff's request for remand (Doc. 10) is **DENIED**; and

2. The Commissioner's request for affirmance (Doc. 13) is **GRANTED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED: September 28, 2026

*s/Douglas L. Micko*
DOUGLAS L. MICKO
United States Magistrate Judge